**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Civil Action No. 26-cv-3349-WJM

YEVHENII SAIENKO,

      Petitioner,

v.

JUAN BALTASAR, in his official capacity as Warden
of the Denver Contract Detention Facility, *et al*.

      Respondents.

---

## ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

---

Before the Court is Petitioner Yevhenii Saienko's Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241 ("Petition") (ECF No. 1) and Emergency Motion for a Temporary Restraining Order and Preliminary Injunction (the "Motion") (ECF No. 4). Respondents Juan Baltazar, in his official capacity as Warden of the Denver Contract Detention Facility ("DCDF"); George Valdez, in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement's ("ICE") Denver Field Office; David Venturella, in his official capacity as Acting Director of ICE; Markwayne Mullin, in his official capacity as Secretary of the Department of Homeland Security ("DHS"); and Todd Blanche, in his official capacity as Acting United States Attorney General (collectively, "Respondents" or "the Government") filed a cursory response. (ECF No. 9.) The Court did not order a reply.

For the following reasons, the Petition is granted, and the Motion is denied as moot.

## I.   BACKGROUND[1]

This case presents an all-too-familiar fact pattern.  Saienko is a citizen of Ukraine.  (ECF No. 1 at ¶¶ 11, 17.)  In or around early 2024, Saienko fled his country due to Russia's ongoing war against Ukraine, and after his home in Luhansk was destroyed by a Russian missile.  (*Id.* at ¶ 17.)  Saienko arrived in the United States on February 28, 2024 pursuant to a travel authorization issued by DHS.  (*Id.* at ¶ 18; ECF No. 1-3.)

Upon his entry, Saienko was granted parole under the Uniting for Ukraine program, which was established by the previous Presidential administration to assist Ukrainians fleeing Russian military aggression.  (*Id.* at ¶ 18.)  Saienko has since filed applications for asylum and for re-parole with U.S. Citizenship and Immigration Services ("USCIS"), both of which remain pending.  (*Id.*)  His most recent Form I-94 shows an "Admit Until Date" of February 26, 2026.  (ECF No. 1-2.)

During the roughly two and a half years since his arrival in the United States, Saienko has obtained employment as a commercial truck driver, paid taxes, developed strong community ties, and committed no criminal offense.  (*Id.* at ¶ 19.)  Despite this, on July 19, 2026, local law enforcement detained Saienko during a routine traffic stop in Cheyenne, Wyoming, upon learning that Saienko did not have lawful immigration status in the United States.  (*Id.* at ¶ 20.)

As has become a clear pattern with our neighboring State, Wyoming law enforcement elected to detain Saienko in order to facilitate his being taken into ICE

---

[1] All citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.

custody, in the absence of any criminal charge, warrant, or prior notice, and without being afforded an opportunity to be heard by a neutral decisionmaker.  (*Id.*)  Indeed, no individualized assessment of Saienko's relative flight risk or danger to the community was conducted before, at the time of, or after his detention.  (*Id.*)  DHS initiated removal proceedings against him on July 21, 2026.  (*Id.* at ¶ 21.)

In the Petition, Saienko challenges the lawfulness of his detention and asks the Court to order his immediate release or, in the alternative, order Respondents to promptly provide him with an individualized bond hearing before an Immigration Judge at which the Government bears the burden of justifying his continued detention.  (*Id.* at ¶¶ 22, 58–73.)

## II.    LEGAL STANDARD

"Challenges to immigration detention are properly brought directly through habeas."  *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004).  More specifically, 28 U.S.C. § 2241 "confers jurisdiction upon the federal courts to hear [such cases."  *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) (citing 28 U.S.C. § 2241(c)(3) (authorizing any person to claim in federal court that they are being held "in custody in violation of the Constitution or laws . . . of the United States")).  "The fundamental purpose of a § 2241 habeas proceeding is the same as that of § 2254 habeas and § 2255 proceedings: they are an 'attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody.'"  *McIntosh v. U.S. Parole Com'n*, 115 F.3d 809, 811 (10th Cir. 1997) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973)).

### III.    ANALYSIS

Saienko claims that his detention violates the Immigration and Nationality Act ("INA") (Count I) and his Fifth Amendment due process rights (Count II).  (*See generally* ECF No. 1.)  The Court agrees.

### A.    INA Violation

Saienko first claims that Respondents' invocation of § 1225(b)(2)[2] as authority for his detention "unlawfully mandates his continued detention and violates the INA," as his detention is properly "governed by the discretionary provision of § 1226(a)."  (ECF No. 1 at ¶¶ 37–38.)

Saienko cites *Rodriguez-Acurio v. Almodovar,* in which the Eastern District of New York concluded that § 1225(b)(2) did not apply to a § 2241 petitioner who had previously been paroled into the United States under § 1182(d)(5)(A).  811 F. Supp. 3d 274, 285–86, 308–11 (E.D.N.Y. 2025).  Similar to Saienko, the § 2241 petitioner in that case had continuously resided in the United States for four years following her grant of humanitarian parole, during which time she worked as a housekeeper, gave birth to a son, applied for asylum, and maintained a "clean record."  *Id.* at 286–87 (*Cf.* ECF No. 1 at ¶ 37 (arguing he is not properly subject to § 1225(b)(2) after "liv[ing] here at liberty for more than two years," during which time he "worked, paid taxes, [and] developed deep community ties").)

This case presents materially the same facts as *Rodriguez-Acurio*, and the

---

[2] The Petition assumes Saienko is detained under § 1225(b)(2)(A), not § 1225(b)(1). (*See, e.g.,* ECF No. 1 at ¶¶ 24, 36–37.)  The Government has offered no clarity on the statutory provision it believes authorizes Saienko's detention, (*see generally* ECF No. 9), so the Court assumes the same.

Government has given the Court no reason to diverge from its statutory interpretation of § 1225(b)(2) as applied to petitioners, like Saienko, who were previously released into the interior of the country pursuant to a grant of humanitarian parole.  (*See generally* ECF No. 9 (declining to submit "a brief in opposition . . . detailing the facts and circumstances of this case").)  Nor would this Court be the first in this District to adopt such an interpretation.  *Abdyrakhmanov v. Baltazar,* 2026 WL 1800941, at *6 (D. Colo. June 23, 2026) (concluding that the detention of "someone who is unlawfully present because his parole has expired . . . must be dealt with in the same manner as any other noncitizen already present in the United States i.e., under § 1226(a)") (internal citations and quotation marks omitted).

The Court thus concludes that § 1226(a)—not § 1225(b)(2)—applies to Saienko.

## B.      Fifth Amendment Violation

Saienko also claims that Respondents have violated his Fifth Amendment procedural due process rights by detaining him "without prior notice or a pre-deprivation hearing."  (ECF No. 1 at ¶ 40.)

Though it ultimately did "not determine . . . whether the Government's position is unconstitutional," the Court finds the Tenth Circuit's recent discussion of the doctrine of constitutional avoidance persuasive to the disposition of Saienko's Fifth Amendment claim in this case.  *Santillan Quiroz v. Mullin,* ---- F. 4th ----, 2026 WL 1876709, at *17 (10th Cir. June 30, 2026).  As further support for its resolution of the statutory interpretation question before it—*i.e.*, "whether § 1225(b)(2)(A) or § 1226(a) applies" to a § 2241 petitioner detained in the interior of the country—the Tenth Circuit considered the following:

> The Due Process Clause of the Constitution forbids the Government from "depriv[ing]" any "person ... of life, liberty, or property, without due process of law."  U.S. Const. amend. V.  "Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty that [this] Clause protects."  *Zadvydas* [*v. Davis*], 533 U.S. [678,] 690 [(2001)].  Due process requires that, whenever the Government detains somebody, it must have a good reason for doing so.  *Id*.  If the detention is civil and nonpunitive, like the immigration detention here, that reason must rise to the level of a "strong special justification."  *Id.*  Adopting the Government's interpretation of § 1225(b)(2)(A) would pose grave constitutional problems because there is little justification, let alone a strong one, for detaining every one of the millions of unadmitted noncitizens in our country.

*Id.* at *16.[3]

Saienko contends—and the Court agrees—that Respondents have circumvented their constitutional obligation to provide a "strong special justification" for his detention, (*id.*), by failing to conduct any individualized assessment before re-detaining him whatsoever, (ECF No. 1 at ¶¶ 47–53.)  *See also Garcia Abanil v. Baltazar,* 817 F. Supp. 3d 1148, 1158 (D. Colo. 2026) (concluding failure to provide individualized bond hearing prescribed by § 1226 necessarily violated petitioner's due process rights).  Indeed, Respondents have provided *no* justification for Saienko's re-arrest and detention aside, seemingly, from their erroneous reliance on § 1225(b)(2)(A).  Their failure to do so is particularly egregious under these circumstances, where the Government has already once made an individualized assessment under § 1182(d)(5)(A) that Saienko could be

---

[3] "To the extent it matters," the Tenth Circuit "assume[d] for the sake of argument that questions about the types of justifications capable of supporting detention sound in substantive due process, while questions about procedures used for proving the satisfaction of a given justification sound in procedural due process.  In that regard, our discussion of constitutional avoidance sounds in substantive due process."  *Id.* at *16 n.12.  The Court makes the same assumption for the purposes of resolving the Petition.

released, and he has "fully complied with the terms of his humanitarian parole" in the more than two years since.  (*Id.* at ¶ 51.)

The Court thus readily concludes that the Government has violated Saienko's due process rights by "offer[ing] neither a justification nor a formal process for the deprivation of Petitioner's protected liberty interest."  *Sosa v. De Anda-Ybarra,* 2026 WL 1453999, at *2 (D.N.M. May 22, 2026).

## C.    Remedy

The Government submits that, "if the Court does grant the Petition, the appropriate relief would be an order directing that Respondents, within seven days of this Court's Order, provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a), or else release Petitioner."  (ECF No. 9 at 2.)  For two reasons, this Court no longer considers a bond hearing to be an adequate remedy to redress the violations discussed herein.

First, at least one other district court in this Circuit has persuasively written that, "since Petitioner's detention under § 1225(b)(2)(A) is void *ab initio,* immediate release is the appropriate remedy to address this deprivation of liberty and restore him to the *status quo ante*."  *Sosa,* 2026 WL 1453999, at *3.  The *Sosa* court reasoned: "[H]ad Petitioner's initial detention accorded with due process, he would have been entitled to a bond hearing," but "a bond hearing cannot retrospectively cure a due process violation stemming from detention without the statutorily required exercise of discretion."  *Id.* That is, "[u]nder INA regulations, a bond hearing occurs only *after* [ICE] has made its 'initial [discretionary] decision to detain'—it is not itself an initial custody determination but an act of '*re*-determination.'"  *Id.* (quoting *Tumba v. Francis,* 813 F. Supp. 3d 394,

7

406 (S.D.N.Y. 2025)).  Thus, while immediate release cannot cure Saienko's roughly two-month long loss of liberty, it is the "remedy that comes the closest to doing so." *Sosa,* 2026 WL 1453999, at *3.

Second, this Court has already written of its "concern[] that the immigration courts are not affording immigrants fair bond hearings," as "the mounting evidence that bond determination hearings conducted in Immigration Court under § 1226(a) have preordained outcomes has become impossible to ignore."  *Pal v. Lyons,* 2026 WL 937962, at *4 (D. Colo. Apr. 7, 2025); *see also Quiroz Zacarias v. Mullin,* 2026 WL 1092162, at *4–*5 (D. Colo. Apr. 22, 2026) (concluding "the IJ deprived [petitioner] of his due process rights" by issuing a bond decision that was "wholly bereft of any analysis whatsoever").  Indeed, courts across the country have, with increasing frequency, ceased "order[ing] even initial bond hearings in cases like this one involving unlawful detention under § 1225(b) because Respondents' conduct can no longer be attributed to mere negligence or ineptitude, . . . and doing so would effectively allow the Government to transform an unlawful detention into a lawful one through *post-hoc* justifications."  *Zheng v. Rokosky,* --- F. Supp. 3d ---, 2026 WL 800203, at *11 (D.N.J. Mar. 23, 2026) (collecting cases).

Given this reality, the Court will order Saienko's immediate release.[4]

---

[4] In *Santillan Quiroz,* the Tenth Circuit contemplated in a footnote that, on remand, the district court should "order the Government to, within seven days of such order, either provide [the petitioner] with a bond hearing or else release him."  2026 WL 1876709, at *17 n.13.  In this Court's view, it is somewhat ambiguous whether this language means that the Tenth Circuit views release as contingent on the Government's failure to provide a bond hearing, or a bond hearing and release as equal, alternative remedies.  In the absence of clear guidance, this Court will continue to order immediate release in the first instance under appropriate circumstances, unless and until the Tenth Circuit holds otherwise.

## IV.    CONCLUSION

For all these reasons, the Court ORDERS as follows:

1.    The Court's Order to Show Cause (ECF No. 7) is MADE ABSOLUTE and Saienko's Petition (ECF No. 2) is GRANTED;

2.    The Court GRANTS this relief to Saienko pursuant to Counts One and Two of the Petition;

3.    The Motion (ECF No. 4) is DENIED AS MOOT;

4.    **By no later than this Sunday, August 9, 2026,** Respondents shall IMMEDIATELY RELEASE Saienko on his own recognizance, along with all his personal belongings, and may not impose any conditions of release or supervision that were not imposed in the original grant of humanitarian parole. **No additional conditions of release shall be imposed on Saienko by Respondents**. Respondents shall further facilitate Saienko's transportation from the detention facility by providing all necessary identity and travel documents to return to his primary address,

5.    Respondents are ENJOINED from re-arresting or re-detaining Saienko unless they demonstrate, by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker, that he is a flight risk or danger to the community such that his physical custody is legally justified pursuant to 8 U.S.C § 1226(a). At any such bond hearing, Respondents shall bear the burden of proof, and Saienko shall be allowed to have counsel present. This injunction shall remain in effect until such time as this Court, or the Tenth Circuit Court of Appeals, vacates this Order;

6.    During such periods of time as Saienko remains in Respondents' custody, Respondents shall continue to be ENJOINED from removing, transferring, or causing

9

the removal or transfer of, Saienko from the District of Colorado until such time as this Court, or the Tenth Circuit Court of Appeals, vacates this Order;

7.      Should Saienko believe he has a good faith basis to seek attorney's fees pursuant to the Equal Access to Justice Act, he is GRANTED leave to file a motion seeking the same, along with all supporting documentation, by no later than **September 4, 2026**.  Respondents shall file a response by no later than **September 25, 2026**, and Saienko shall file a reply by no later than **October 9, 2026**; and

8.      Judgment shall enter in Saienko's favor and against Respondents on **August 21, 2026,** UNLESS prior thereto the Court is informed that Respondents have failed to fully and timely comply with the terms of this Order.

Dated this 7th day of August, 2026.

BY THE COURT:

William J. Martinez
Senior United States District Judge